**CORTLAND LINE COMPANY, INC., Plaintiff–Appellant,**

v.

**THE ORVIS COMPANY, INC., Defendant–Cross Appellant.**

**Nos. 99–1081, 99–1109.**

United States Court of Appeals, Federal Circuit.

Feb. 14, 2000.

1352

James R. Muldoon, Hancock and Estabrook, LLP, of Syracuse, New York, argued for plaintiff-appellant.

Paul E. Wagner, Brown, Pinnisi & Michaels, P.C., of Ithaca, New York, argued for defendant-cross appellant.

Before RADER, Circuit Judge, FRIEDMAN, and ARCHER, Senior Circuit Judges.

RADER, Circuit Judge.

On summary judgment, the United States District Court for the Northern District of New York ruled that The Orvis Company, Inc. (Orvis) did not infringe Cortland Line Company, Inc.'s (Cortland's) U.S. Patent No. 5,120,003 ('003 patent). *See Cortland Line Co. v. Orvis Co.,* 49 USPQ2d 1745, 1998 WL 743722 (N.D.N.Y.1998). The district court also concluded that Orvis did not infringe Cortland's registered trademark.

Because the district court correctly concluded as a matter of law that the claims at issue cannot cover the accused device, either literally or under the doctrine of equivalents, this court affirms-in-part. However, because the district court erred in granting summary judgment of no trademark infringement, this court vacates-in-part and remands.

## I.

Both Cortland and Orvis are in the fishing equipment business. Cortland acquired the rights and interests to the '003 patent and a registered trademark, "CASSETTE." The '003 patent—issued from an application filed on August 2, 1990—covers a fishing reel with an interchangeable cartridge spool.

Traditionally, fishermen had great difficulty changing fishing lines in response to varying fishing conditions. To change fishing lines, a fisherman had to remove the entire reel spool from the pole and substitute another reel spool. This process made it difficult to quickly change fishing lines to accommodate changing fishing conditions. In addition, multiple spare reel spools with different fishing lines was an expensive proposition for most fishermen. The invention solves this problem by providing a fishing reel with an easily interchangeable cartridge spool that mounts onto the reel spool. Claim 1, the only independent claim, recites:

1. A fishing reel that provides for an interchangeable line bearing cartridge spool comprising:

a housing, said housing including a flat wall, said housing having a rigid first spool receiving shaft affixed thereto and protruding away from said wall;

a cartridge spool;

first spool means for mounting said cartridge spool, said first spool means comprising a first end plate, a first spool axle attached rigidly to said first end plate, *a second end plate*, and *means for connecting said second end plate to said first spool axle*, said first spool axle having a hollow aperture which is fitted over said first spool receiving shaft;

means attached to said first spool means for manually rotating said first spool means;

said cartridge spool comprising two end plates and a central cartridge spool axle unitarily connected there between, said cartridge spool axle being fitted over and mounted upon said first spool axle, said cartridge spool carrying a supply of fishing line, whereby said cartridge spool can be installed on or removed from said first spool.

'003 patent, col. 6, ll. 12–34 (emphasis added). As shown below, Figure 1 of the '003 patent illustrates the invention:

**FIG. 1**

Specifically, cartridge spool 26 is mounted between end plates 18a and 18d. To operate the invention, a fisherman places a cartridge spool between the two end plates, which essentially act as a reel spool of the fishing reel. The fisherman then couples female threaded connector 24a to male threaded connector 24b. The fisherman then simply attaches the assembled unit—first spool means—to fishing reel housing 12. To change fishing lines, the fisherman disengages the end plates 18a and 18d and replaces cartridge spool 26 with another cartridge spool. By carrying several different cartridges, a fisherman can speedily change lines according to different fishing conditions.

Orvis sells the accused fishing reel—marketed as Rocky Mountain Reels—having an interchangeable cartridge spool for quick and inexpensive changing of fly line. British Fly Reels, Ltd. (BFR), a British corporation, manufactures the Rocky Mountain Reels based on the technology described in Duffelen, United Kingdom Patent No. 2,183,431. BFR owns the Duffelen patent, which issued on June 10, 1987. The figure below illustrates a side elevational view of the Rocky Mountain Reel:

**Orvis Rocky Mountain Reel**

Cartridge Mounting Arrangement

Housing with wall & shaft

Cartridge spool with two end plates & axle

As shown above, the Rocky Mountain Reel contains a housing, a cartridge spool, and an end plate. The housing features a wall, a receiving shaft, and, at the base of the receiving shaft, a plastic insert with two receiving slots (not shown). The cartridge spool has two end faces connected by a cylindrical axle. A hollow, circular rubber grommet outlines the circumference of the cylindrical axle facing the housing (not shown). The end plate includes a hollow spool axle with two prongs. For assembly, the cartridge spool slides over the spool axle, which in turn, slides over the receiving shaft of the housing. The two prongs of the spool axle then snap into the two receiving slots of the plastic insert.

On September 4, 1997, Cortland sued Orvis alleging infringement of the '003 patent and the registered trademark "CASSETTE." The district court granted summary judgment of no patent infringement. The district court determined that the Rocky Mountain Reel has no second end plate either literally or equivalently. Additionally, the district court decided on summary judgment that Orvis does not infringe Cortland's trademark. Cortland appeals.

## II.

This court reviews a district court's grant of summary judgment without deference. *See Conroy v. Reebok Int'l,*

*Ltd.*, 14 F.3d 1570, 1575, 29 USPQ2d 1373, 1377 (Fed.Cir.1994). Whether the accused device contains each element exactly, as properly construed, or its equivalent, is a determination of fact. *See Southwall Techs., Inc. v. Cardinal IG Co.*, 54 F.3d 1570, 1575, 34 USPQ2d 1673, 1676 (Fed. Cir.1995). In review of the district court's summary judgment in favor of Orvis, this court draws reasonable inferences from the evidence in favor of the non-movant, Cortland. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A patent infringement analysis involves two steps: claim construction and a determination whether the accused product infringes the properly construed claim. *See Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976, 34 USPQ2d 1321, 1326 (Fed.Cir.1995) (en banc), *aff'd*, 517 U.S. 370, 116 S.Ct. 1384, 134 L.Ed.2d 577 (1996).

■ The first step, claim construction, is a matter of law, which this court reviews *de novo*. *See Cybor Corp. v. FAS Techs., Inc.*, 138 F.3d 1448, 1456, 46 USPQ2d 1169, 1172 (Fed.Cir.1998) (en banc). Although the central focus remains on the claim language as illuminated by the written description and the prosecution history, extrinsic evidence may supply context to understand the claim language. *See Pitney Bowes, Inc. v. Hewlett–Packard Co.*, 182 F.3d 1298, 1309, 51 USPQ2d 1161, 1168 (Fed.Cir.1999); *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582, 39 USPQ2d 1573, 1576 (Fed.Cir.1996).

The only disputed element of claim 1, the first spool means, contains four components: (1) a first end plate, (2) a first spool axle attached to the first end plate, (3) a second end plate, and (4) means for connecting the second end plate to the first spool axle. In dispute are the second end plate and the means for connecting.

■ This court first examines the meaning of the claim term "a second end plate." Claim terms receive their ordinary and customary meaning unless the patentee assigns a special meaning. *See Vitronics*, 90 F.3d at 1582. The plain meaning of the term "plate" means a broad, flat piece of material. *See* WEBSTER'S NINTH NEW COLLEGIATE DICTIONARY 901 (1990). The words and drawings in the '003 patent reinforce this customary meaning of the word "plate."

The written description of the '003 patent describes the end plate as a structure that can accommodate "frictional contact" with a cartridge spool to resist relative rotation between the cartridge spool and the end plates. *See* '003 patent, col. 2, ll. 54–60. Figure 1 of the '003 patent illustrates two distinct end plates 18a and 18d as flat, disc-like structures. End plates 18a and 18d have surfaces of sufficient diameter so that "the end faces of cartridge spool 26 flush against the inside of spool 18 end faces [and] keep the outside end plate 18d firmly locked in position." *Id.*, col. 4, ll. 62–65. When in place, these end plates have frictional contact with the cartridge spool and resist rotation.

Moreover, in the '003 patent's "Brief Description of the Drawings," the patentee states that "FIG. 1 shows a side elevational view exploded of a fishing reel in accordance with *the* present invention including the interchangeable spool." '003 patent, col. 3, ll. 31–33 (emphasis added). Indeed, figure 1 illustrates the only embodiment of the claimed invention. In figure 1, the second end plate is a disk-like structure of sufficient diameter that is separate from the cartridge spool and abuts the end face of the cartridge spool. Thus, the specification supports the conventional meaning of the word "plate" as a broad, flat disc.

The record of the administrative proceedings before the United States Patent and Trademark Office supports this interpretation of the '003 patent. Specifically, in seeking allowance of the pending claims, the applicant stated during prosecution:

[T]he rotatable spool fishing reel shown by Duffelen is itself completely different than applicant's reel both in structure and function. Clearly, neither Kovalovsky or Duffelen show[s] *a cartridge spool mounted on a conventional type spool with one of the spools functioning as a removable cartridge to the primary reel spool that functions in a conventional way.* ... The fact is that when combined, there is no logic that would allow one to end up with *a spool mounted on a spool* as specifically claimed in applicant's claims 1 through 8.

J.A. at 200 (emphasis added). Accordingly, the two end plates constitute outer surfaces of a "primary reel spool that functions in a conventional way." The end plates thus secure the removable cartridge spool within the conventional reel spool. To secure the cartridge spool within the reel spool, as illustrated in the patent drawings, the second end plate must be a disk-like structure that abuts the end face of the cartridge spool. The function and description of the second end plate also require sufficient diameter—approximating that of the cartridge spool—to hold the cartridge spool in place. In sum, the prosecution history also supports the customary meaning of the term "plate."

■ The next claim element in dispute is the "means for connecting said second end plate to said first spool axle." Because the claim uses the word "means" without specifying any structure or material for performing the recited connecting function, this element calls for interpretation under 35 U.S.C. § 112, ¶ 6 (1994). *See Al–Site Corp. v. VSI Int'l, Inc.,* 174 F.3d 1308, 1318, 50 USPQ2d 1161, 1166 (Fed.Cir.1999) ("[I]f the word 'means' appears in a claim element in combination with a function, it is presumed to be a means-plus-function element."); *Personalized Media Communications v. International Trade Comm'n,* 161 F.3d 696, 704–05, 48 USPQ2d 1880, 1887–88 (Fed.Cir.

1998). Thus, this means language in the claim encompasses the "corresponding structure, material, or acts described in the specification and equivalents thereof." 35 U.S.C. § 112, ¶ 6.

An examination of the '003 patent reveals that it discloses only one structure corresponding to means for connecting—threaded connectors. As illustrated in figure 1, "[t]he female connector 24a is firmly locked in the center of end plate 18d and receives the male threaded connector 24b of bushing 24 which is pressed so as not to rotate in the center of cylindrical axle 18c of spool 18." '003 patent, col. 4, ll. 17–21. The specification further states that "[t]he firm lock of the threaded connectors 24b and 24a" withstands "any resistance on the line or resistance to rotation of the spool 18 and cartridge spool 26." *Id.,* col. 4, ll. 60–67. Because the specification describes only one structure corresponding to the connecting function, this court limits the connecting means element to threaded connectors and equivalents thereof.

A.

■ A court may grant summary judgment when no "reasonable jury could return a verdict for the nonmoving party." *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505. Applying the construed claim to the accused device, this court affirms the district court's summary judgment of no literal infringement of claim 1.

Cortland proposes two theories of infringement. Under the first theory, Cortland asserts that a flanged rubber grommet on the Rocky Mountain Reel corresponds to the second end plate of claim 1. Under this "rubber grommet alone" theory, Cortland contends that "the interference fit of the rubber grommet to the slightly tapered end of the first spool axle" corresponds to the means for connecting element. Alternatively, Cortland argues that the second end

plate is a combination of Rocky Mountain Reel's rubber grommet and the plastic insert. Under this "combination" theory, Cortland contends that the means for connecting is "the interference fit of the rubber grommet on the tapered end of the first spool axle *and* the insertion of the two prongs of the first spool axle in the receiving slots of the plastic insert at the base of the receiving shaft." J.A. at 426.

■ Literal infringement of a claim requires that every limitation recited in the claim appear in the accused device, i.e., that the properly construed claim reads on the accused device exactly. *See Amhil Enters., Ltd. v. Wawa, Inc.,* 81 F.3d 1554, 1562, 38 USPQ2d 1471, 1476 (Fed.Cir. 1996). Claim 1 requires a second end plate of sufficient diameter and means for connecting the second end plate by threads, or its structural equivalents, to a spool axle. The Rocky Mountain Reel lacks both.

First, the Rocky Mountain Reel does not contain a second end plate under either of Cortland's infringement theories. The rubber grommet, either alone or in combination with the plastic insert, is not an end plate. In fact, the rubber grommet of the Rocky Mountain Reel is part of the Orvis cartridge spool. In normal use, the rubber grommet is permanently affixed around the inner edge of the hollow axle of the cartridge spool. In operation, the rubber ring engages the cartridge spool and the hollow spool axle of the end plate.

Even if the rubber grommet detached from the Orvis cartridge spool, the rubber grommet would not fall within the literal scope of a second end plate. A small rubber ring, fitted around the circumference of cartridge spool is not an end plate. It lacks both a disk-like structure and sufficient diameter. Further, because the rubber ring is part of the cartridge spool, it cannot abut the end face of the cartridge

spool to resist relative rotation as described and shown in the specification. Quite simply, a rubber grommet is not a plate.

Further, Cortland's "combination" theory cannot cure these deficiencies. The combination of the rubber grommet with the plastic insert does not make that structure more like a plate. In fact, Orvis' plastic insert is a permanent part of the housing and is significantly smaller than the face of the cartridge spool. Thus, the rubber grommet, with or without the plastic insert, does not constitute a second end plate as claim 1 requires. Therefore, a second end plate is completely missing from the Rocky Mountain Reel.

The Rocky Mountain Reel also does not contain the required means for connecting the second end plate to the first spool axle. In order to have a means for connecting the second end plate to the first spool axle, the Rocky Mountain Reel must first have a second end plate. Because the Rocky Mountain Reel does not contain a second end plate, as discussed above, it necessarily follows that the Rocky Mountain Reel also cannot have means for connecting the second end plate to the first spool axle.

■ Even if the Rocky Mountain Reel had a second end plate, the rubber grommet, either alone or in combination with the plastic insert, does not fall within the literal scope of the means for connecting element. An accused device satisfies a means-plus-function element literally if it performs the identical function recited in the claim, and incorporates the structure disclosed in the specification or an equivalent thereof. *See Cybor Corp.,* 138 F.3d at 1457. The written description of the '003 patent establishes that the claimed "connecting" function is performed by threaded connectors 24a and 24b. These threaded connectors firmly lock the first spool axle and the second end plate "so as not to rotate in the center of the cylindrical axle

18c of spool 18" and "so that it does not disconnect despite any resistance on the line or resistance to rotation of the spool 18 and cartridge spool 26." '003 patent, col. 4, ll. 21–22 and 64–67. Neither party disputes that the Rocky Mountain Reel does not have threaded connectors.

■ The next question is whether the Rocky Mountain Reel contains a structural equivalent of the threaded connectors disclosed in the '003 patent. A structure in an accused device is equivalent to the disclosed structure corresponding to a means-plus-function element if it is insubstantially different from the disclosed structure. *See Chiuminatta Concrete Concepts, Inc. v. Cardinal Indus., Inc.,* 145 F.3d 1303, 1309, 46 USPQ2d 1752, 1756 (Fed.Cir. 1998). "[T]he statutory equivalence analysis requires a determination of whether the 'way' the assertedly substitute structure performs the claimed function, and the 'result' of that performance, is substantially different from the 'way' the claimed function is performed by the 'corresponding structure … described in the specification,' or its 'result.'" *Odetics, Inc. v. Storage Tech. Corp.,* 185 F.3d 1259, 1267, 51 USPQ2d 1225, 1229–30 (Fed.Cir.1999).

Under the "rubber grommet alone" theory, Cortland asserts that means for connecting is the interference fit of the rubber grommet to the hollow spool axle. However, a mere interference fit does not "connect" in substantially the same way, i.e., threadably lock. Moreover, a mere interference fit would not obtain the result obtained by threaded connectors—preventing a "rotat[ion] in the center of cylindrical axle 18c of spool 18." '003 patent, col. 4, ll. 21–22. Accordingly, the rubber grommet is not insubstantially different from the disclosed threaded connectors and, therefore, does not suffice as a structural equivalent.

A combination of the rubber grommet and the black plastic insert similarly does not constitute a structural equivalent of threaded connectors. The plastic insert is a built-in ratchet for the offset disc drag mechanism in the housing. The interface of the two prongs on the hollow axle and the plastic insert does not form a firm or threadably locked connection. An interference fit differs significantly from a threaded connection. Also, this court's review of the record discloses no evidence suggesting structural equivalency between threaded connectors and an interference fit. Therefore, again, the Rocky Mountain Reel does not contain a structural equivalent of the means for connecting element.

Thus, the second end plate and the means for connecting, as correctly construed, are literally absent from the Rocky Mountain Reel. This court therefore affirms the district court's grant of summary judgment of no literal infringement.

### B.

■ The district court also properly held on summary judgment that the Rocky Mountain Reel did not infringe under the doctrine of equivalents. The doctrine of equivalents requires that the accused product contain each limitation of the claim or its equivalent. *See Warner–Jenkinson Co. v. Hilton Davis Chem. Co.,* 520 U.S. 17, 40, 117 S.Ct. 1040, 137 L.Ed.2d 146, 41 USPQ2d 1865, 1875 (1997). An element in the accused product is equivalent to a claim element if the differences between the two are "insubstantial" to one of ordinary skill in the art. *See id.* "Although equivalence is a factual matter normally reserved for a fact-finder, the trial court should grant summary judgment in any case where no reasonable fact finder could find equivalence." *Sage Prods., Inc. v. Devon Indus., Inc.,* 126 F.3d 1420, 1423, 44 USPQ2d 1103, 1106 (Fed.Cir.1997). This case meets that standard.

The rubber grommet of the Rocky Mountain Reel, either alone or in combina-

tion with a plastic insert, is not equivalent to the second end plate of claim 1. The second end plate is a structure separate from the cartridge spool and, accordingly, frictionally contacts the cartridge spool to resist relative rotation. The rubber grommet of the Rocky Mountain Reel is a permanent part of the cartridge spool and, therefore, does not abut the cartridge spool to provide frictional contact between the cartridge spool and the end plates. Thus, the Rocky Mountain Reel is substantially different from "a spool mounted on a spool" arrangement of claim 1.

The Rocky Mountain Reel also does not contain an equivalent of the means for connecting. As the district court noted, the rubber grommet "does not fasten or lock as does the threaded connector in the '003 patent. In other words, whereas in the Rocky Mountain Reel the removable cartridge, into which the flanged rubber grommet is fitted, separates from the cartridge mounting axle when a moderate amount of force, like a quick tug, is applied to it, the threaded connector in the '003 patent does not permit such a separation; instead, to remove the removable cartridge from Cortland's reel, one must first unthread the threaded connector that secures the first and second end plates." *Cortland*, 49 USPQ2d at 1752. On review, this court agrees with the district court. A mere interference fit is not insubstantially different from threaded connectors that threadably lock the second end plate to the first spool axle "so that it does not disconnect despite any resistance on the line or resistance to rotation of the spool 18 and cartridge spool 26." '003 patent, col. 4, ll. 64–67.

The prosecution history further supports the conclusion that the Rocky Mountain Reel does not infringe claim 1 under the doctrine of equivalents. During the prosecution, the applicant expressly distinguished the Duffelen patent stating that "the rotatable spool fishing reel shown by Duffelen is itself completely different than applicant's reel both in structure and function." J.A. at 200. The Duffelen patent, however, discloses a fishing reel with structure very similar to the Rocky Mountain Reel—housing with a receiving shaft, a cartridge spool, and an end plate with a hollow spool axle. Cortland's statement evinces a clear and unmistakable surrender of fishing reels embodying the teachings of Duffelen.

The design of the Rocky Mountain Reel is based on the Duffelen patent and is indeed very similar to the fishing reel of Duffelen. J.A. at 5 The one distinction is that the Rocky Mountain Reel replaces a small metal clip ring with the rubber grommet in dispute. The metal clip ring and the rubber grommet, however, are similar in size.

In the present case, Cortland argues that the claim covers by equivalence the Rocky Mountain Reel, which embodies the teachings of Duffelen. Because the applicant clearly and unmistakably surrendered during prosecution any fishing reel embodying the subject matter of Duffelen, Cortland cannot recapture under the doctrine of equivalents the surrendered subject matter. *See Litton Sys., Inc. v. Honeywell, Inc.*, 140 F.3d 1449, 1458, 46 USPQ2d 1321, 1327 (Fed.Cir.1998). The great similarity between the fishing reel described in Duffelen and the Rocky Mountain Reel further supports a finding of non-infringement under the doctrine of equivalents. Accordingly, this court also affirms the district court's grant of summary judgment of non-infringement under the doctrine of equivalents.

### III.

Cortland also sued Orvis alleging infringement of the registered trademark "CASSETTE." In response, Orvis raised two defenses: genericness and fair use. The district court granted summary judg-

ment for Orvis, holding that its use of the word "cassette" constituted fair use under 15 U.S.C. § 1115(b)(4) (1994). Relying on its fair use holding, the district court declined to reach the genericness issue.

In reviewing an issue not exclusive to patent law, this court applies the rule of the regional circuit, in this case the United States Court of Appeals for the Second Circuit. *See Cicena Ltd. v. Columbia Telecomms. Group,* 900 F.2d 1546, 1548, 14 USPQ2d 1401, 1403 (Fed.Cir. 1990). Summary judgment requires the moving party to show both the absence of genuine issues of material fact and entitlement to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c). In reviewing the district court's summary judgment in favor of Orvis, this court draws reasonable inferences from the evidence in favor of the non-movant, Cortland. *See Anderson,* 477 U.S. at 255, 106 S.Ct. 2505.

To establish a fair use defense, Orvis must show that its use of the word cassette "is a use otherwise than as a mark ... of a term or device which is descriptive of and used fairly and in good faith only to describe the ... goods or services of such party, or their geographic origin." 15 U.S.C. § 1115(b)(4). Upon review, this court concludes that there are genuine issues of material fact precluding summary judgment of fair use.

First, Cortland raises disputed issues of material fact on whether the trademark "CASSETTE" is descriptive of specific characteristics exhibited by both Cortland's CASSETTE Reels and the Orvis Rocky Mountain Reel. For example, evidence of record indicates that before Cortland's use of the term "cassette," the fishing reel market used other terms including "spare," "extra," or "cartridge" spools. J.A. at 214, 302 Cortland asserts that no manufacturer had used the term "cassette" to describe either fishing equipment or spare cartridge spools.

Cortland also contends that Orvis used the disputed term in a trademark sense by referring to the Rocky Mountain Reel as a "cassette type reel." Moreover, Cortland produces record evidence of actual confusion of consumers noting past customer inquiries, product compatibility, and questions on electronic bulletin boards. In addition to the disputed facts on the extent of use of the mark and actual confusion, the intent of Orvis' use—whether Orvis used the mark in good faith—is also in dispute.

Significantly, the district court states in its opinion that "[h]ow often Orvis used the term 'cassette' and in what context is a matter of some debate." *Cortland,* 49 USPQ2d at 1753. Accordingly, a summary judgment of fair use was inappropriate in light of disputed genuine issues of material fact. This court therefore remands this case to the district court for further proceedings on determination of disputed issues of material fact by a fact-finder.

In addition, the district court did not consider the summary judgment motion on genericness. The district court stated that "[t]he court finds the fair use defense is applicable, therefore it need not reach the issue of whether the term 'cassette' as applied to fly fishing reels is generic and no longer eligible for trademark protection." *Id.* at 1754 n. 7. Although the district court first turned to the fair use defense, the determination of whether a mark is generic is relevant to the existence of an enforceable trademark. Accordingly, this court remands to the district court for further proceedings on the issue of genericness.

## CONCLUSION

Because the Rocky Mountain Reel does not infringe the '003 patent, either literally or equivalently, this court affirms the district court's grant of summary judgment of no patent infringement. However, because the district court erred in granting

summary judgment of no trademark infringement, this court vacates and remands to the district court for further proceedings in accordance with this opinion.

### COSTS

Each party shall bear its own costs.

*AFFIRMED–IN–PART, VACATED–IN–PART, and REMANDED.*