**LEAR CORPORATION,**
**Plaintiff–Appellant,**

v.

**BERTRAND FAURE TECHNICAL
CENTER, INC., Defendant–
Appellee.**

**No. 02–1583.**

United States Court of Appeals,
Federal Circuit.

Oct. 23, 2003.

Before SCHALL, BRYSON, and LINN,
Circuit Judges.

### DECISION

SCHALL, Circuit Judge.

Lear Corporation ("Lear") appeals the July 30, 2002 order of the United States District Court for the Eastern District of Michigan granting summary judgment of noninfringement in favor of Bertrand Faure Technical Center ("BFTC"). *Lear Corp. v. Bertrand Faure Technical Center, Inc.,* No. 00–CV–72895 (E.D.Mich. July 30, 2002) (*"Summary Judgment Order"*). In the district court, Lear alleged that BFTC's vehicle headrest product infringed the sole claim of Lear's United States Patent No. 5,795,019 (issued Aug. 18, 1998) (the "019 patent"). The decision to grant summary judgment of noninfringement turned on the court's claim construction order. *See Lear Corp. v. Bertrand Faure Technical Center,* No. 00–CV–72895 (E.D.Mich. Jan. 7, 2002) (*"Claim Construction Order"*). On appeal, Lear challenges both the construction of a disputed claim limitation, "pivot axis," and the subsequent grant of summary judgment on the issue of literal infringement.

Because we conclude that the district court erred in its construction of the claim limitation "pivot axis," we *vacate* the grant of summary judgment and *remand* the case for a determination of literal infringement under the correct claim construction.

### DISCUSSION

#### I.

Both Lear and BFTC are auto industry suppliers based in Michigan. The '019 patent, "Vehicle Seat and Headrest Arrangement," discloses a specialized vehicle seat and headrest combination that pro-

tects a passenger's head and neck from injury during a collision. The device described by the '019 patent is fairly simple. The upper parts of the seat back sides are rigidly connected to a cross-frame member, on which the headrest is mounted. The upper part of the seat, in turn, is connected to the bottom half of the seat by way of "pivot hinges." The upper part of the seat is also connected to an "impact plate" suspended in the center of the seat back. The impact plate is not connected to the lower part of the seat. During a collision, the impact plate is pushed in a rearward direction, causing the pivot hinges to open, which rotates the upper portion of the seat and headrest forward to protect the passenger's head and neck. *See* '019 Patent, Figs. 2, 4.

The '019 patent is brief, setting forth only one preferred embodiment of the invention and one claim. Claim 1 states:

I claim:

(1) A vehicle seat and headrest arrangement comprising

a seat back frame having an upper part and a lower part,

the upper part of the seat back frame comprising a cross-frame member and an upper portion of a pair of spaced side members, and the lower part of the seat back frame including at least a lower portion of the pair of spaced side members;

a headrest mounted on the cross-frame member; an impact plate positioned between the side members of the lower part and secured to the upper part; pivot hinges

connecting the upper part with the lower part and defining a pivot axis about which the upper part and the headrest can pivot in a forward direction, and in which the impact plate can pivot in a rearward direction, from a normal position;

and spring means biasing the upper part, the headrest and the impact plate to their normal position.

*Id.* Col. 4:3–18.

## II.

BFTC's accused device, the "Spinal Care System," is also designed to protect the head and neck during a collision. However, it performs its safety function through both rotational *and* lateral movement of the headrest. The Spinal Care System utilizes two vertical side supports attached to the seat cushion frame; an inverted U-shaped seat back frame, rigidly attached to a headrest and suspended between the two side supports; and horizontal crossbars that traverse the seat back frame. These crossbars serve essentially the same purpose as the '019 patent's "impact plate"–when the passenger pushes back on them during a collision, the headrest and upper seat back frame are rotated to protect the passenger's head and neck.

In the court below, the parties disputed the construction of several terms of the '019 patent, but the claim limitation most pertinent to infringement was "pivot axis." The district court construed claim 1 of the '019 patent to include the following limitation:

pivot hinges connecting the upper part with the lower part and defining a *common fixed* pivot axis about which the upper part and the headrest can pivot in a forward direction, and in which the impact plate can pivot in a rearward direction from a normal position. . . .

*Claim Construction Order,* slip op. at 17 (emphasis in original).

To arrive at this construction, the district court looked to a scientific dictionary, which defined "axis" as a "line about which a body rotates," and to the "plain language" of Claim 1, which suggested to the

court that "pivot axis" must refer to a common line defined by the location of the pivot hinges. *Id.* at 13. The court then weighed statements by the inventor during prosecution that suggested to the court that the '019 patent's invention was a simpler alternative to a prior invention in its field, claimed in United States Patent No. 5,378,043 (issued on Jan. 3, 1998) (the "Viano patent").[1] *Id.* at 13–16. The court also viewed it as significant that both the description and drawings relating to the '019 patent's sole preferred embodiment depict *only* rotational movement. The court felt bound to adopt a construction that would appropriately reflect what it viewed as prosecution disclaimers by the patentee of much of the Viano device's functionality and capabilities.

Based on its claim construction, the district court granted BFTC's motion for summary judgment of noninfringement of the '019 patent on July 30, 2002. Lear does not challenge the grant of summary judgment insofar as it relates to the doctrine of equivalents. Rather, Lear argues that the district court erred in granting summary judgment of no literal infringement.

We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(1).

### III.

Lear makes two arguments on appeal. First, it contends that the ordinary and customary meaning of "pivot axis" encompasses both fixed and non-fixed axes of rotation. Second, it claims that since the ordinary meaning of "pivot axis" is clear, consideration of extrinsic evidence, such as the Viano patent, during claim construction was improper.

BFTC defends the district court's claim construction. It urges that the court's

construction is true to the ordinary meaning of the term "pivot axis"–both as it is defined in technical dictionaries and as it is used by Lear in the '019 patent. BFTC emphasizes that the inventor's references to the Viano patent during prosecution of the '019 patent are properly characterized as a surrender of complex mechanisms of rotation (like Viano's) in favor of a simple, fixed axis. BFTC asks us to uphold the district court's narrow construction, which it contends reflects the relative simplicity of the invention of the '019 patent.

Summary judgment is appropriate where the record shows "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). We review a grant of summary judgment of non-infringement by a district court *de novo,* applying the same standard as the district court. *Cortland Line Co. v. Orvis Co.,* 203 F.3d 1351, 1355–56 (Fed.Cir.2000). We review a district court's claim construction without deference. *Cybor Corp. v. FAS Techs., Inc.,* 138 F.3d 1448, 1454 (Fed.Cir.1998) *(en banc).*

When construing a claim limitation, a court must avoid importing limitations from the written description and prosecution history into the claim. *See Tex. Digital Sys. v. Telegenix, Inc.,* 308 F.3d 1193, 1204 (Fed.Cir.2002). The words used in a claim are presumed to have their ordinary meaning. *CCS Fitness, Inc. v. Brunswick Corp.,* 288 F.3d 1359, 1366 (Fed.Cir.2002). In rare instances, "[a]n accused infringer may overcome this heavy presumption and narrow a claim term's ordinary meaning, but he cannot do so simply by pointing to

---

1. Lear also owns the Viano patent, which it initially asserted against BFTC in this litigation.

the preferred embodiment or other structures or steps disclosed in the specification or prosecution history." *Id.*

We respectfully disagree with the district court's claim construction because we conclude that the intrinsic evidence imposes no requirement that the "pivot axis" described in Claim 1 be fixed permanently in space. Applying our presumption in favor of ordinary meaning, we hold that "pivot axis," as used in Claim 1, must refer to *"a line about which a body rotates, fixed relative to a pair of pivot hinges."* Dictionary definitions proffered by the parties establish that "pivot axis" must refer to a line about which rotation occurs. At the same time, the plain language of the claim requires that the location of this line be defined by the placement of the "pivot hinges." The district court concluded that the "pivot hinges" need *not* be rigidly attached to the side members of the seat back, *see Claim Construction Order*, slip op. at 16–17, and there is nothing in the claim language or plain meaning of "pivot axis," as used in Claim 1, that requires that the line of rotation be permanently fixed in space.

Under *CCS Fitness*, when the ordinary meaning of a claim term is clear, the specification or prosecution history must contain an explicit suggestion of an alternate definition before the "heavy presumption" in favor of ordinary and customary meaning will be overcome. Here, during prosecution of the '019 patent, the inventor did emphasize the simplicity of his device relative to Viano's complex rotational mechanism, but these statements do not constitute the strong disavowal required to overcome the *CCS Fitness* "heavy presumption" of ordinary meaning. As far as the district court's inquiry into the specific features of the '019 invention relative to the Viano patent is concerned, since the inventor did not expressly reference to those specific distinctions to secure the patenting of his own invention, they should not influence the construction of Claim 1. Consultation of extrinsic sources, such as the Viano patent, was not appropriate in this case.

Since there is no compelling evidence that would require the ordinary and customary meaning of "pivot axis" to be narrowed or changed, that meaning must control. "Pivot axis," as defined in Claim 1, refers to "a line about which a body rotates, fixed relative to a pair of pivot hinges."

For the foregoing reasons, we vacate the district court's grant of summary judgment of no literal infringement in favor of BFTC. The case is remanded to the district court for determination of literal infringement under the correct construction of the term pivot axis.